UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLENDI SAHITI, | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  7/22/2021 |
| Plaintiff, | |
| -against- | 19 Civ. 7377 (AT) |
| TARENTUM, LTD, d/b/a Ulivo, FABIO<br>CAMARDI, and MANUELA<br>CALABRESE, | **ORDER** |
| Defendants. | |

ANALISA TORRES, District Judge:

Plaintiff, Blendi Sahiti, brings this action against Defendants Tarentum, LTD, Fabio

Camardi, and Manuela Calabrese, for minimum wage violations under the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law (the

"NYLL"), § 190 *et seq.*, and failure to provide wage statements and notices of pay under the

NYLL.  FAC, ECF No. 15.  Defendants move for summary judgment on all claims under

Federal Rule of Civil Procedure 56.  Def. Mot., ECF No. 70.  For the reasons stated below,

Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The facts discussed in this opinion are undisputed except where otherwise noted.  The

Court has drawn all reasonable inferences in favor of Plaintiff as the nonmovant.  *See Costello*

*v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

Fabio Camardi is the founder and president of Tarentum, LTD ("Tarentum") a

domestic corporation.  Camardi Dep. Tr. at 19:15–19, ECF No. 71-2; 56.1 Stmt. ¶ 1, ECF

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the first amended complaint, the Rule 56.1 statement of undisputed facts, and Plaintiff's response.  Disputed facts are so noted.  Citations to a paragraph in the Rule 56.1 statement also includes Plaintiff's response.

No. 76.  Tarentum owns Ulivo, an Italian restaurant in Manhattan.[2]  56.1 Stmt. ¶ 1.  During the relevant time period, Camardi contends that he was responsible for hiring all employees, *id*. ¶ 3, and for setting Ulivo's hiring, termination, and payroll policies.  Camardi Dep. Tr. at 19:23–20:16.  Manuela Calabrese served as Ulivo's general manger.  56.1 Stmt. ¶¶ 5–6.  She was responsible for, among other things, recruiting employees for Ulivo.  Calabrese Dep. Tr. at 46:19–20, ECF No. 71-3.  Ulivo's practice was to hire employees through an employment agency.  *Id*. at 37:6–11.  In 2017, Ulivo hired bussers from non-party Parma Employment Agency ("Parma"), which is owned by Liliana Rosaspina.  56.1 Stmt. ¶¶ 4, 10.

The parties dispute every fact concerning Plaintiff's employment at Ulivo.  According to Plaintiff, he used Parma to find work from time to time.  Sahiti Decl. ¶ 3, ECF No. 75-4.  He states that during the week of August 28, 2017, Rosaspina instructed Plaintiff to report to Ulivo on August 31, 2017, because Ulivo needed a busser.  *Id*. ¶ 4.  Upon arrival, Plaintiff was introduced to Calabrese, who told Plaintiff "to go with" another employee named Eddy.  *Id*. ¶¶ 6–7.  Plaintiff worked from 4:30 p.m. to 11:30 p.m. that night.  *Id*. ¶¶ 5, 9.  At the end of his shift, Plaintiff spoke with Calabrese, who told Plaintiff that she would call him if they needed him to work again.  *Id*. ¶ 11.  A few days later, Plaintiff called Ulivo and spoke to Calabrese. *Id*. ¶ 12.  During this call, she informed him that Ulivo did not need him to work again, and that he would not be paid for his work on August 31, 2017, because it was the company's policy to not pay for the first day of work.  *Id*. ¶ 13.  Plaintiff claims that Ulivo failed to provide him with documents regarding his wages and failed to pay him for any of his work on August 31.  *Id*. ¶ 14.

---

[2] In accordance with the parties' submissions, and because Tarentum is doing business as Ulivo, the Court uses Tarentum and Ulivo interchangeably throughout this motion.

Camardi and Calabrese testified that they have no recollections of meeting Plaintiff. Camardi Dep. Tr. at 73:12–15; Calabrese Dep. Tr. at 64:7–18. Ulivo's records do not show that Plaintiff worked on August 31, 2017. ECF No. 71-1 at 4–9. Calabrese stated that Ulivo has a system in place that requires bussers to, among other things, observe, train, sign forms, and clock in and clock out before being hired by Ulivo. Calabrese Dep. Tr. at 37:6–38:6, 52:1–54:2. Moreover, she does not recall a phone call with Plaintiff concerning his unpaid wages. *Id*. at 64:19–25. She also testified that Ulivo pays employees for time spent training. *Id*. at 9:20–21.

Finally, Rosaspina testified that she "sent" Plaintiff to Ulivo on August 31, 2017, meaning that she sent him to interview at Ulivo. Rosaspina Dep. Tr. at 11:7–20, ECF No. 71-4. Plaintiff's Parma record reads "8/31/17 Ulivo." ECF No. 71-4 at 34. Rosaspina stated that Parma does not have the authority to hire employees for Ulivo, and she does not recall Plaintiff telling her that he was hired there. Rosaspina Dep. Tr. at 18:7–9, 19:6–8. She said that on September 5, 2017, a few days after she sent Plaintiff to Ulivo, she sent him to a different job. *Id*. at 15:6–12. Moreover, according to Rosaspina, applicants pay Parma a fee for its services. *Id*. at 19:9–10. Plaintiff paid Parma a partial fee of $80 on August 28, 2017. *Id*. at 19:13–15. In October 2017, he paid $70 to cover the balance of the fee, which is generally paid once an applicant is hired by a restaurant. *Id*. at 20:7–13.

## DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party."  *Conn. Ironworkers Emp'rs Ass'n, Inc. v. New Eng. Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  "[D]istrict courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage," as the "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, nor for the court on summary judgment."  *Jeffreys v. City of New York*, 426 F.3d 549, 551, 553 (2d Cir. 2005).

II.    <u>Minimum Wage Claim</u>

Plaintiff brings claims against Defendants for minimum wage violations under the FLSA and the NYLL.  The FLSA requires employers who meet certain conditions to pay employees a specified minimum wage. 29 U.S.C. §§ 206–07.  Courts construe the statute "liberally to apply to the furthest reaches consistent with congressional direction." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 n.2 (2d Cir. 2009).  New York law has the same requirements, except that it

specifies a higher minimum wage rate than the federal minimum wage. *See* NYLL § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2. Defendants argue that summary judgment is warranted because no reasonable jury could conclude that Defendants employed Plaintiff. Def. Mem. at 16–17. The Court concludes, however, that Defendants have failed to establish that no triable issue of fact exists as to whether Tarentum and Camardi were Plaintiff's employers.

An employee qualifies for FLSA protections if (1) in any workweek, the employee is "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 206(a) (individual coverage), or (2) the employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce," *id*. § 207(a)(1) (enterprise coverage). The FLSA defines "employee" as an "individual employed by an employer." 29 U.S.C. § 203(e)(1). New York likewise defines "employee" as "any individual employed, suffered or permitted to work by an employer." N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.14(a). The Second Circuit treats both definitions as "the same in substance." *Glatt v. Fox Searchlight Pictures, Inc*., 811 F.3d 528, 534 (2d Cir. 2016) (citing *Zheng v. Liberty Apparel Co*., 355 F.3d 61, 78 (2d Cir. 2003)).

Plaintiff seemingly seeks entitlement to FLSA's protections under the theory of enterprise coverage. FAC ¶¶ 26–48. Under this theory, the employee does not need to be involved in an activity that affects interstate commerce. Rather, all employees of a business are covered under the enterprise theory if the business: (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

5

The FLSA defines "enterprise" as:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. § 203(r)(1).  Defendants do not contest that Tarentum is an enterprise as defined pursuant 29 U.S.C. § 203(r)(1).  *See generally* Def. Mem., ECF No. 74.

Thus, having established that Tarentum is an "enterprise" under the FLSA, the issue to be determined is whether Defendants are an "employer."  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and permits "an individual within a company that . . . employs a worker [to be held] personally liable for damages as that worker's 'employer,'" in certain circumstances, *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013).  "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work."  *Zheng*, 355 F.3d at 66.  To determine whether an employee-employer relationship exists, a court must consider the "economic reality rather than technical concepts."  *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

The Second Circuit has articulated several tests to determine the economic reality of an employment situation.  One test focuses on "formal control" and examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id*. at 142–43; *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  These factors are "useful largely in cases

involving claims of joint employment," because it "bear[s] directly on whether workers who are already employed by a primary employer are also employed by a second employer." *Zheng*, 355 F.3d 67–68.

Even though satisfying the formal control factors "can be sufficient to establish employment status," it is not necessary. *Barfield*, 537 F.3d at 143. An employee-employer relationship can also exist using a functional control test. *Zheng*, 355 F.3d at 72. The functional control test considers:

> (1) whether the [alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether [the primary employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employer].

*Barfield*, 537 F.3d at 143. Furthermore, the Second Circuit has also looked to:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc*., 840 F.2d 1054, 1058–59 (2d Cir. 1988). The essential inquiry is "whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]." *Id*. at 1059.

These tests provide "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143 (quotation marks omitted).

Here, Defendants have not established that there are no triable facts concerning whether an employee-employer relationship existed between Plaintiff and Tarentum.  The four-factor test in *Carter* for determining when an entity exercises sufficient formal control over a worker weighs in favor of denying summary judgment.  The record shows that Tarentum had the power to hire and fire employees, supervised and controlled employees' work schedules and conditions of employment, determined rates and method of pay, and maintained employment records.  Def. 56.1 Stmt. ¶¶ 1, 3–4, 6, 19–21, 24, 26.  Defendants argue that Plaintiff was never hired by Tarentum.  Def. Mem. at 17–18.  However, Plaintiff contends that Rosaspina told him to report to Ulivo on August 31, 2017, at 4:30 p.m.  Sahiti Decl. ¶ 4.  Upon arrival, he met Calabrese who told him to follow another employee named Eddy.  *Id*. ¶ 7.  Eddy then showed him how to refill water glasses, clear plates, and wipe down tables.  *Id*. ¶ 8.  Plaintiff performed those duties until approximately 11:30 p.m.  *Id*. ¶ 9.  He contends that when he requested compensation for the shift he worked, Calabrese told him that the company's policy was to not pay workers for their first day of work.  *Id*. ¶ 13.  Moreover, a reasonable juror could find that, even if Parma did not have the authority to hire workers for Ulivo, its records at least support some aspects of Plaintiff's version of the events, *i.e.*, that was he was told to report to Ulivo on August 31.  *See* ECF No. 71-4 at 34.

Although Plaintiff's declaration is not supported by other testimonial or documentary evidence, the Court finds that he has done more than show some "metaphysical doubt as to the material facts."  *Green v. Humana at Home, Inc*. 380 F. Supp. 3d 400, 410 (S.D.N.Y. 2019).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996).  And whatever deficiencies exist in Plaintiff's declaration, they "are not serious enough to render the declaration incredible as a matter of law."  *Frost v. N.Y.C. Police Dep't*,

980 F.3d 231, 245 (2d Cir. 2020).  Thus, the Court cannot disregard Plaintiff's affidavit at this

stage of the litigation.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (finding that,

on summary judgment, courts cannot simply disregard a nonmovant's "self-serving" allegations

of fact).  Plaintiff's affidavit recounts his version of the events giving rise to this litigation.  And,

"there is nothing in the rule to suggest that [a] nonmovants' affidavit . . . cannot—as a matter of

law—suffice to defend against summary judgment."  *Id.*; Fed. R. Civ. P. 56(c).  Thus, Plaintiff

has raised a genuine issue of material fact for trial as to whether Tarentum was Plaintiff's

employer.

Defendants also contend that summary judgment is warranted with respect to Camardi

and Calabrese because Plaintiff has not adduced evidence that they were his employers.  Def.

Mem. at 18.  The Court disagrees with respect to Camardi.  Defendants have failed to show that

there are no disputes of material fact concerning whether Camardi was a joint employer with

Tarentum.  In addition to considering the *Carter* factors, the Second Circuit has looked to

whether "an individual defendant . . . possess[es] control over a company's actual 'operations' in

a manner that relates to a plaintiff's employment."  *Irizarry*, 722 F.3d at 109.  Camardi is the

founder and president of Tarentum.  Camardi Dep. Tr. at 19:15–19.  He testified that he has the

sole power to determine the company's hiring and termination policies.  *Id*. at 19:23–20:4;

20:12–14.  He stated that he supervises every employee employed by Tarentum, maintains

employment records, determines the rate of pay for non-tipped employees, and signs

employment checks.  *Id*. at 20:19–22, 21:12–13, 22:24–23:6.  Camardi also noted that no one

else had the authority to hire or fire employees without his approval.  *Id*. at 23:9–11.

That Plaintiff failed to mention Camardi in his declaration is not dispositive.  *Irizarry*,

722 F.3d at 110 ("Nothing . . . in the FLSA itself [] requires an individual to have been

personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel

against such a requirement."). Camardi also testified that he was the "top man" of Tarentum and that everyone reported to him. Camardi Dep. Tr. at 22:19–23. His involvement in just about every day-to-day aspect of the restaurant demonstrates that "[h]is decisions affected not only [Tarentum's] bottom line but . . . [also] the personnel and products therein." *Irizarry*, 722 F.3d at 116. Thus, crediting Plaintiff's version of the events—that he worked a shift at Ulivo for which he was not paid—a reasonable juror could conclude that Camrdi was Plaintiff's joint employer during that time.

The Court agrees, however, that Plaintiff has not adduced sufficient evidence to establish that Calabrese was Plaintiff's employer. Calabrese served as Tarentum's general manager. 56.1 Stmt. ¶ 5. In that capacity, she communicated with Parma about Ulivo's hiring needs, and interviewed prospective employees. Calabrese Dep. Tr. at 61:8–17; 56.1 Stmt. ¶ 23. Calabrese testified that she could not hire or fire employees without Camardi's approval. Calabrese Dep. Tr. at 37:25–38:3, 50:11–22. Nor could she set the payrate of any employee, or sign employee pay checks. *Id.* at 55:7–10, 18–20. Although she supervised employees and assigned shifts to them, she did so at the discretion of Camardi. *Id.* at 24:19–25; Camardi Dep. Tr. at 37:18–24 ("Q: Does the general manger have full discretion to set the schedule? A: No. She has to be approved from me."); *id.* at 75:10–15 ("Q: [W]hen she works does she manage the day-to-day operations? A: Yes, under my supervision"). She also did not independently maintain Tarentum's employment records. *Id.* at 23:4–6. Thus, based on this record, there is insufficient evidence to create a triable issue of fact as to whether Calabrese was Plaintiff's employer.

Although neither the New York Court of Appeals nor the Second Circuit has decided whether "the tests for 'employer' status are the same under the FLSA and the NYLL," *Irizarry*, 722 F.3d at 117, "district courts in this Circuit have consistently interpreted the definition of

10

'employer' under the New York Labor Law coextensively with the definition used by the FLSA," *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015).

Accordingly, Defendants' motion for summary judgment on Plaintiff's minimum wage claims under the FLSA and the NYLL is DENIED with respect to Tarentum and Camardi, and GRANTED with respect to Calabrese.

III.    Notice of Pay and Wage Statement

Plaintiff brings claims against Defendants under the NYLL for their failure to provide wage statements and notice of pay.  FAC ¶¶ 82–85.  The NYLL's wage statement provision requires that employers furnish employees with a statement listing "the dates of work covered by that payment of wages; name of the employee; name of the employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages."  NYLL § 195(3).  The NYLL's notice provision requires that employers provide their employees with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.  *Id*. § 195(1)(a).

Plaintiff claims that during his shift at Ulivo, he received no documentation concerning the hours he worked or the rate he would be paid.  Sahiti Decl. ¶ 14.  Taken together, this is sufficient to create a genuine dispute of material fact as to whether Tarentum and Camardi furnished such records.  Thus, viewing the facts in the light most favorable to Plaintiff, a

reasonable juror could find that Defendants failed to comply with the NYLL's wage statement and notice of pay provisions.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under the NYLL are DENIED as to Tarentum and Camardi, and GRANTED as to Calabrese.

IV.    Motions *in Limine*

In addition, Defendants seek to preclude Plaintiff from testifying or submitting any evidence (1) concerning his call to Tarentum after August 31, 2017, and (2) relating to his immigration status.  Def. Mem. at 20–21.  The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 31 n.4 (1984); *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (noting "[i]n limine motions deal with evidentiary matters and are not filed until the eve of trial").  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294 (S.D.N.Y. Aug. 22, 2003).

The Court concludes that Defendants motions are "overbroad and premature."  *Leonel Cruz v. United Automobile Workers Union Loc. 2300*, No. 18 Civ. 48, 2019 WL 2329843, at *26 (S.D.N.Y. July 18, 2019).  Here, Defendants fail to state with specificity the evidence they seek to exclude.  *Id.* (denying motions *in limine* where party sought to preclude "huge swaths of unidentified evidence").  And generally, courts have declined to reach the merits of motions *in limine* at the summary judgment stage.  *Senior by Senior v. Eihab Hum. Servs., Inc.*, 2019 WL 8128563, at *4 (E.D.N.Y. Oct. 10, 2019).

Accordingly, Defendants' motions are DENIED without prejudice to renewal.

12

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is DENIED with

respect to Plaintiff's claims under the FLSA and the NYLL against Tarentum and Camardi, and

GRANTED with respect to Calabrese.

The Clerk of Court is directed to terminate the motion at ECF No. 70.

SO ORDERED.

Dated: July 22, 2021
New York, New York

_____
ANALISA TORRES
United States District Judge

13